# Richmond

## DELTA OIL SALES COMPANY, INC. v. H. S. HOLMES, AND OTHERS.

April 21, 1947.

Record No. 3164.

Present, Holt, C. J., and Hudgins, Gregory, Eggleston, Spratley and Buchanan, JJ.

The opinion states the case.

*White, Hamilton & Wyche,* for the appellant.

*William Old,* for the appellees.

SPRATLEY, J., delivered the opinion of the court.

This proceeding involves the right of the Delta Oil Sales Company, Inc., appellant, to obtain a permit, under ordinances of the city of Petersburg, Virginia, from T. Price Samuel, building inspector of that city, to construct and operate a public gasoline or oil filling station on a lot of land leased by it from the Atlantic Coast Line Railroad Company.

The lot of land involved is located at the southeast corner of W. Washington and Perry streets, fronting 100 feet on the east side of Perry street and running back therefrom 111 feet on the southern side of Washington street. The city block in which this lot is located is bounded on the north by W. Washington street, with a frontage of 210 feet; on the west by Perry street, with a frontage of 550 feet; on the

south by Lawrence street, with a frontage of 210 feet; and on the east by Davis street, with a frontage of 550 feet.

On September 19, 1922, pursuant to Act of the Assembly, 1922, page 46 (Va. Code, 1924 (Michie), section 3032a), the city enacted a zoning ordinance defining residence and non-residence districts, and regulating and restricting the construction and use of buildings within said districts. Subsequent to the enactment of the "Zoning Act," Acts of Assembly, 1926, pages 345, *et seq.* (Va. Code, 1942 (Michie), chapter 122A), this ordinance was amended four times, October 2, 1928, October 15, 1928, October 7, 1929, and November 18, 1930. The successive amendments liberalized the restrictions on the extension of business into districts defined as residential. The ordinance as finally amended, omitting its title, reads as follows:

"1. That the City of Petersburg be, and it is hereby, divided into zones or districts, to be known respectively as Residence and Non-Residence Districts.

"Non-Residence Districts shall comprise all lands which at the time this ordinance goes into effect are used for any business or industry other than farming, truck gardening, the growing of trees, shrubs, vines or plants, the raising of animals, or the conduct of a boarding or lodging house, and all lands located or fronting upon any section of any street between two successive intersecting streets, when not less than one-half of the ground floor frontage on either side of said street between said two successive intersecting streets is devoted to any such business or industry or is manifestly intended to be so used at the time this ordinance takes effect.

"Residence Districts shall comprise all areas not included in Non-Residence Districts.

"2. Except as hereinafter provided no parcel of land lying in a Residence District and not at said time devoted to any such business or industry, as aforesaid, shall hereafter be used therefor, and no permit shall be issued for the erection, alteration or conversion of any building for or to such use upon any such parcel.

"3. A permit may be issued for the erection in a Resi-

dence District of a building for the purpose of any business or industry, or for the alteration or conversion of a building in such district for or to such purpose, provided the ground floor frontage of the land upon which said building is to be erected or converted for the purpose of business or industry, and concerning which said permit is desired, together with the ground floor frontage of such other property on the said side of said street between two successive intersecting streets as is at the time of the application for said permit used for the purpose of business or industry, is more than one-half of the ground floor frontage on that side of said street between said intersecting streets.

"4. A permit may be issued for the erection in a Residence District of a building for the purpose of any business or industry, or for the alteration or conversion of a building in such district for or to such purpose, provided that there be filed with the application for such permit written consents thereto signed and acknowledged by the owners or legal representatives of the owners of more than one-half of all lands used for other than business or industrial purposes, at the time such application is made, which lie on both sides of the street and between the two intersecting streets nearest to and on either side of the land in question or within four hundred feet on either side thereof, in case the nearest intersecting street is more than that distance therefrom.

"5. For the purpose of this ordinance when a lot or parcel of land is situated at the corner of two intersecting streets it shall be deemed to front on that street on which it has the less frontage, and when said lot or parcel of land at the corner of two intersecting streets has the same frontage on both streets it shall be deemed to front on both streets.

"6. This ordinance shall be in force from its passage."

The city also enacted on May 21, 1929, an ordinance relating to the construction and operation of gasoline stations, which reads as follows:

"An Ordinance to Regulate the Erection or Maintenance of Gasoline or Oil Filling Stations and to Provide Penalties for Violation.

"BE IT ORDAINED BY THE COUNCIL OF THE CITY OF PETERSBURG as follows:

"Section I. That it shall be unlawful for any person, firm or corporation for themselves or as agents, rentors, or lessees, to locate, built, erect, construct, maintain or operate any public gasoline or oil filling station on or within one hundred and fifty (150) feet from the curb line of any street in the City of Petersburg, or to construct or maintain a driveway from the street over the curb and sidewalk to such station when more than one-half of the property frontage on the same side of the street and between the two intersecting streets nearest to and on either side of the land in question, or within four hundred (400) feet on either side thereof in case the nearest intersecting street is more than that distance therefrom, is occupied by buildings used exclusively for residence purposes without first securing the written consent of the owners or legal representatives of the owners of more than one-half of all the property abutting on the said street at the time such application is made, which lie on the same side of the street and between the two intersecting streets nearest to and on either side of the land in question or within four hundred (400) feet on either side thereof in case the nearest intersecting street is more than that distance from the median line of such proposed gasoline or oil filling station.

"Section II. Any person, firm or corporation, or any agent, rentor, or lessee of any person, firm or corporation, who shall violate any of the provisions of this ordinance shall be fined not less than $100.00, nor more than $500.00 for each offense, and each week of continued violation of this ordinance shall constitute a separate offense, after the first prosecution has begun.

"Section III. This ordinance shall not apply to, or be operated against, any owner or operator of any public gasoline or oil filling station which has heretofore been erected.

"This ordinance shall be enforced from its passage."

In opposition to the granting of the permit applied for by the appellant, H. S. Holmes, Miss H. M. Friend, John O'Conner, and Dr. E. L. McGill, owners of property on

Perry and W. Washington streets, instituted this suit against the appellant and T. Price Samuel, building inspector of the city of Petersburg. Their bill alleged that the amendments to the ordinance of 1922 were invalid; but that if it should be determined that the amendments were valid, the ordinance of November 18, 1930, solely determined the rights of the parties; that the lot of land involved is embraced in a district designated as residential; and that written consents of the property owners in that district were not filed with the application for the permit. They prayed that the court construe the zoning ordinances and enjoin the building inspector of the city from issuing the permit applied for, unless and until proper written consents from the property owners on W. Washington and Perry streets be filed with the application.

The defendants filed separate answers. The building inspector denied the conclusions of the bill, and called for strict proof of its allegations. The appellant denied the allegations and the conclusions of the bill. It averred that its rights were determined solely under the provisions of the ordinance of May 21, 1929, regulating the erection and maintenance of gasoline or oil filling stations. It further averred that the lot upon which it proposed to erect and operate its station was, at the time of its application, and had been for more than thirty years, located in a non-residence district, as defined in the zoning ordinance as amended in 1930, and was manifestly intended to be used for business at the time when that ordinance took effect.

The evidence was taken *ore tenus*, and the trial court, after hearing argument, dictated to the court reporter an opinion, which was made a part of the record. In his opinion, the learned chancellor held that the appellant had failed to show that the property on the east side of Perry street between W. Washington and Lawrence streets was a non-residence district; that although it had been shown that a part of the property had been used for business purposes, there was not disclosed the number of feet fronting on Perry street so used either in 1922 or in 1930. He further

held that, under the ordinance, the corner lot was deemed to front on that street on which it had the less frontage, and that both the ordinances of November 18, 1930, and May 21, 1929, were applicable to the permit applied for. A final decree was entered on March 21, 1946, in conformity with the opinion of the court, whereby the building inspector of the city was enjoined from issuing a permit to the appellant until it had complied with section 4 of the ordinance of November 18, 1930, and the ordinance of May 21, 1929, sometimes called the "Filling Station Ordinance."

The effect of this decree was to deny the issuance of a permit to the appellant because it had not filed with its application written consents from the owners of more than one-half of all lands used for other than business or industrial purposes "which lie on both sides of the street and between the two intersecting streets nearest to and on either side of the land in question * * * ."

Counsel for the city of Petersburg have filed in this court their brief as *amici curiae*. They concur in the contention of appellant that the filling station ordinance is the only one applicable in this case, and they aver that, for many years, such a construction has been placed upon the ordinances in question by those charged with their enforcement.

The appellant contends that the court erred both in its finding of fact and determination of law. The appellees contend that the court erred solely in holding that the land involved fronted only on Perry street instead of fronting on both W. Washington and Perry streets. They ask that the decree be modified or corrected accordingly.

It is apparent that the ordinances of November 18, 1930, and May 21, 1929, are not wholly in accord. In a sense, the latter relates to zoning, and both ordinances have the same object. The principal variations are obvious, that is, the location of a filling station building with reference to the curb line of the street and the extent of consent required from other owners of property in the neighborhood.

The May 21, 1929, ordinance grants no right to con-

struct or operate filling stations. It does not exempt that business from the zoning ordinance or from any building code ordinance, nor convert a filling station operation into a residential project. It merely prohibits the construction and operation of gasoline stations, unless certain requirements are met. It does not specifically amend the zoning ordinance. It does not deal with the issuance of permits to build in any zoned district. There is nothing in it to show a plain intention that it was intended to abrogate or supersede the general legislation relative to zoning. The subsequent re-enactment of the zoning ordinance, without reference to the filling station ordinance, is persuasive of this conclusion. Repeal of statutes or ordinances by implication is not favored in Virginia. *Petersburg* v. *General Baking Co.*, 170 Va. 303, 196 S. E. 597; 9 Digest of Va. and W. Va. Reports (Michie), Statutes, sec. 115, *et seq.*

We find no error in the holding of the trial judge that both of the ordinances are applicable in this case.

The evidence is vague in some particulars, but not in any real conflict on any material point.

West Washington and Lawrence streets run east and west; Perry and Davis streets run north and south. The Atlantic Coast Line Railroad Company owns all of the land fronting on the east side of Perry street between W. Washington and Lawrence streets, that is, the whole 550 feet frontage. The land at the southeast corner of W. Washington and Perry streets, on a portion of which it is proposed to erect the gasoline station, was acquired by the railroad in 1899. At that time, there was located upon it a residence with some outbuildings. The residence was torn down many years ago; but the record does not show whether it was razed prior to or subsequent to November 18, 1930. The remaining portion of the land on the east side of Perry street lying south of the location of the former residence has been owned by the railroad company since prior to 1860. On this land there is a house fronting on Perry street, erected prior to 1899, and occupied as a residence by a foreman employed by the railroad company. The yard

around the house is enclosed by a fence. The city engineer of Petersburg testified that the distance from the wire fence, on the southern side of the yard, to Lawrence street was 280 feet, and the distance from the same point to W. Washington street was 270 feet.

A hedge runs along the east side of Perry street south of the foreman's house to Lawrence street. The area south of the house has never had any residences on it. A watchman's tower, a house for railroad handcars, and a house for tools and material are located in the southwestern end of this area near Perry street. They face the railroad tracks. There are two entrances to the land, and the open spaces are used by the employees of the railroad to work on their tools and to store material.

Several tracks of the railroad company cross the intersection of Perry and Lawrence streets, running diagonally in a northeast direction across the city block to points on Davis street about the middle of the block; thence across Davis street in the same direction to W. Washington street at points between the intersection of the latter street with Davis street on the west and Market street on the east. At the southern end of the railroad lot, two switch tracks branch to the west from the main line and several other switch tracks branch to the east for commercial and industrial use in loading and unloading freight cars.

The area south of the foreman's house had been used at various times since 1919 by a coal company, which had its office between the tracks and Perry street, and also by a cement mixing plant. Material had been placed, whenever necessary and convenient, near the tracks for loading and unloading. The extent of the use of the area depended upon the needs and demands of the railroad company.

R. A. G. Barnes, the freight agent of the railroad company in Petersburg since 1919, identified the land as a railroad yard. He testified that the entire area south of the foreman's house and extending to Lawrence street had always been used by his company for putting out material and storing it, and as a necessary part of the operation of

the railroad. Said he: "A little off of Perry street they pile material, because it is near the tracks. And I suppose, if they had enough material to reach to Perry street, they would pile it there."

Witnesses for the appellees did not contradict the foregoing evidence. They merely minimized the uses to which the land had been put. Their evidence tended to show that the entire activities of the railroad company were confined to that portion of its property near its tracks rather than to the portion fronting on Perry street, the front portion being vacant land.

Not unmindful of the weight which should be given to a finding of fact by a trial judge, we are of opinion, after a careful review and analysis of the evidence, that it is clearly against his finding in this case. The evidence, as we view it, fails to show that the appellees, as complainants, proved a case entitling them to an injunction.

■ On the other hand, it is conclusively shown that prior to and continuously since the adoption of the zoning ordinance, more than one-half of the frontage of the east side of Perry street between W. Washington and Lawrence streets, that is, the 280 feet south of the foreman's house, has been devoted to business or industry. For seventy-five years it has never been used for any other purposes,—the purpose for which it was peculiarly adaptable. It requires no stretch of the imagination to find that it was "manifestly intended to be so used," at the time the switching tracks were constructed thereon, and at all other times since, including the time at which the appellant applied for the building permit. It was a non-residence district at the time of the adoption of the zoning ordinance, and that status has never been changed. The ordinance does not require actual use. Intended use is sufficient.

Yards are necessary for many purposes in the operation of railroads. In the very nature of their use they have more or less vacant spaces at times. Use depends upon the convenience and demand of the railroads. It can hardly be doubted that the Atlantic Coast Line Railroad Company

could have erected on its land such building or buildings as it desired for business or industrial purposes, or conducted on its land any proper and necessary business in connection with its railroad system or incidental thereto, without fear of violation of the ordinance in question. This right stamps the character of the land.

Section 5 of the ordinance of November 18, 1930, clearly designates the lot fronting 100 feet on Perry street and running back therefrom 111 feet on the south side of W. Washington street a Perry street lot. That which is clear needs no construction.

For the foregoing reasons, the decree of the trial court is reversed, the injunction thereby awarded dissolved, and this proceeding dismissed.

*Reversed and final decree.*